IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY G. HARRIS, #N57672,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10–cv–596–MJR–SCW |
| | ) |
| **DANNY ALLEN, WARDEN SWARTZ,** | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff has exhausted his administrative remedies as to the claims against Defendant Danny Allen. It is **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies, that the Court **DENY** Defendant Allen's Motion for Summary Judgment (Doc. 38), and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Factual Findings

Defendant Danny Allen has filed a motion for summary judgment arguing that Plaintiff has failed to exhaust his administrative remedies against Defendant Allen. This matter stems from

Plaintiff's Complaint for retaliation and medical indifference against Defendant Allen and Warden Swartz of the Pinckneyville Correctional Center. As it relates to Defendant Allen, Plaintiff's Complaint alleges that while housed at Western Illinois Correctional Center, in Central Illinois, he had started a soy-diet revolution by encouraging inmates to file lawsuits in order to get a soy-free diet. Plaintiff had previously won a lawsuit on his soy-free diet (Doc. 17 at p. 2). Later, Plaintiff was transferred to Pickneyville Correctional Center and although he informed correctional officers of his need for a soy-free diet, various officers would not honor his diet (*Id.*). Plaintiff's Complaint alleges that Defendant Allen, specifically, denied Plaintiff his special soy-free diet tray every time he was on duty. Plaintiff alleges that was done in retaliation for Plaintiff filing a soy-diet lawsuit while housed at Western Illinois Correctional Center (Doc. 17 at Count 1). Plaintiff's Complaint also alleged that Allen's denial of Plaintiff's diet tray was in deliberate indifference to his medical needs (*Id.* at Count 2).

On March 1, 2012, Defendant Allen filed a motion for summary judgment (Doc. 39) arguing that Plaintiff had failed to exhaust his administrative remedies against Defendant. Defendant points to the Administrative Review Board (hereinafter "ARB") records which indicate that although Plaintiff submitted several grievances regarding retaliation and denial of his soy-free diet, none include any allegations against Defendant Allen. Specifically, Defendant points to one grievance submitted on July 17, 2009 that was fully exhausted (Doc. 39 Exhibit 1 at ¶ 7; Ex. 4). In that grievance, Plaintiff grieved that he had received a tray from a C/O Johnson which was marked soy free but which contained soy protein tamales (Doc. 39 Ex. 4). Plaintiff informed C/O Johnson of the issue who provided him with another tray and then left (*Id.*). Plaintiff's grievance alleges that C/O Allen came by Plaintiff's cell and informed him that C/O Johnson had left but that a Sgt. McAlvey knew that Plaintiff had not been fed (*Id.*). Defendant alleges that this grievance, although fully exhausted through the ARB, did not allege any grievance against Defendant Allen and only mentioned him incidently. Defendant

also pointed out that Plaintiff attached another grievance to his Complaint dated July 31, 2009 alleging that Allen failed to make his rounds, but noted that the grievance had not been exhausted with the ARB (Doc. 39 Ex. 1 at ¶8). ARB records noted that Plaintiff had filed various grievances regarding his being denied his soy-free diet tray, but that the grievances related to other correctional officers and not Allen (*Id.* at ¶7).

Plaintiff, however, argues that he has exhausted his claims against Allen. In addition to the July 17, 2009 grievance, which he alleges successfully exhausts his claims against Allen, Plaintiff argues that he filed other grievances that were fully exhausted in which he labels Allen as the "gallery officer". Specifically, Plaintiff points to a grievance he filed on June 25, 2009 (Doc. 41-1 Ex. 1 at Attachment 6 & 7). The Court notes that the grievance form does not request names, just a summary of Plaintiff's grievance (*Id.*). In that grievance, Plaintiff grieved that he had been denied an adequate tray on June 25 in retaliation. He alleged that he tried to get the gallery officer to address the problem with the tray, but the officer never performed a walk thru of the cell wing as required (*Id.*). Plaintiff alleges that he exhausted his claims against Danny Allen because he referred to him as the gallery officer who was assigned to Plaintiff's wing and refused to do his rounds or address Plaintiff's diet issues (Doc. 41 Ex. 1 at p. 2). Plaintiff also alleges that he filed other grievances against Allen, by labeling him the "gallery officer", but that those grievances were denied as duplicates. It appears that Plaintiff never appealed those to the ARB. Plaintiff has also filed an affidavit noting that Allen was the gallery officer on duty at the time the events in his grievance took place. Defendant Allen has not sought to dispute Plaintiff's statements in his affidavit.

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issue presented in Defendant Walter's motion is solely a legal question.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where

failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." ***Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.   **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about his complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be

handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g)**.

**B.     Defendant Danny Allen**

As to Defendant Allen, Plaintiff's Complaint alleges that Allen retaliated against him for filing grievances about his soy-free diet by denying him a soy-free tray and was also deliberately indifferent to his dietary needs. Defendant Allen argues that Plaintiff failed to exhaust his remedies against him because only one of Plaintiff's grievances mentions Allen and only in an incidental manner. Plaintiff argues that he has named Defendant Allen in one grievance and has also referred to Defendant Allen as the gallery officer in other grievances that were fully exhausted. In support of his argument that he has exhausted his remedies, Plaintiff points to a grievance he filed on June 25, 2009. This grievance, regarding his denial of a soy free diet and failure of the gallery officers to properly make rounds and remedy is inadequate tray, was fully exhausted through the prison grievance process and the ARB. Plaintiff points out that he specifically alleges that the Gallery Officer on duty would not address the problems with his tray and that Allen was the Gallery Officer on Plaintiff's wing. Plaintiff also points to a grievance filed July 17, 2009, also fully exhausted, which names C/O Allen as the gallery officer on Plaintiff's "deck" who he spoke with about his soy-free tray.

While the PLRA does not require that a prisoner name an individual in his grievance, the Seventh Circuit requires strict adherence to the Illinois Department of Correction's grievance rules. *See Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**. The Illinois Department of Correction's

grievance procedures, in place at the time Plaintiff filed his grievance, require that an inmate's grievance contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." **20 Ill. Admin. Code § 504.810(b)**. While the grievance procedures do allow inmates to file grievances against individuals whose names are not known, an inmate is required to "include as much descriptive information about the individual as possible." *Id*. This provision of the Code, requiring an inmate to, at the very least, describe the individual at issue in his grievance, went into effect in 2003. *See Maddox v. Love*, **655 F.3d 709, 721 (7th Cir. 2011).** However, IDOC does not appear to have changed its grievance form in light of the 2003 changes (*See* Doc. 41-1 Ex. 1 at Attachment 6 & 7. The Grievance Form appears to note that the form was revised in March of 2005).

Here, the Court finds that Plaintiff has successfully exhausted his administrative remedies against Defendant Allen. In Plaintiff's June 25 grievance, he complains that he tried to get a gallery officer, which he now states was C/O Allen, to address his diet issue, but that gallery officers fail to do their jobs of making their required rounds. While the grievance does not specifically name Allen, it does mention a gallery officer and alleges that the gallery officers on Plaintiff's wing/cell block are not making their required rounds. Defendant Allen does not dispute that he was a gallery officer on the wing/deck where Plaintiff's cell was located.

Although the grievance does not mention Allen specifically, the grievance was fully exhausted through the administrative process on its merits. The Seventh Circuit has recently indicated that when the institution rules on a grievance on the merits and does not rely on any procedural shortcomings, then Defendants can not use that shortcoming to argue that a plaintiff has failed to exhaust. *Maddox v. Love*, **655 F.3d 709, 721-22 (7th Cir. 2011) ("A procedural shortcoming...amounts to failure to exhaust only if prison administrators explicitly relied on that**

**shortcoming. Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function in alerting the state and inviting corrective action, and the defendants cannot rely on the failure to exhaust defense" (citations omitted)).** *See also Glick v. Walker*, **385 Fed. Appx. 579, 582-83 (7th Cir. 2010) (Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit.")**. In *Maddox*, the Court found that the inmate's grievance, although it did not name the individuals responsible for the decision the inmate grieved, "served its function by providing prison officials a fair opportunity to address his complaint." *Id*. **at 722.** The Court noted that he grieved a decision by the prison, and that from the facts of the grievance, the prison could determine who in the prison was responsible for the decision at issue. *Maddox*, **655 F.3d at 722.** The Seventh Circuit found the conclusion to be particularly appropriate in situations where the grievance form did not instruct the inmate that he had to provide the name or description of the prison employee being grieved against. *Id*.

      Here, as in *Maddox*, Plaintiff's compliance with the grievance system was never questioned throughout any stage of the grievance process and instead was decided on the merits. Never did any official in the grievance chain note that Plaintiff had failed to properly identify any of the gallery officers at issue in the grievance. His grievance, in fact, served to provide prison officials with a "fair opportunity" to address Plaintiff's issues with the gallery officers. That Plaintiff did not name Allen specifically was a technical defect that did not hamper the grievance process. *See Gevas v. Cox*, **Case No. 11-cv-352-MJR, Doc. 90 at p. 17 (May 2, 2012)**; *Maddox*, **655 F.3d at 722 (citing** *Jones v. Bock*, **549 U.S. 199, 219 (2007) (providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement))**. Further, like in *Maddox*, the prison officials could have determined that Allen was one of the gallery officers

Plaintiff was grieving against, considering his complaint that the gallery officers on duty during the meal time hours were not addressing his diet issues and refused to make their required rounds. From Plaintiff's grievance, it is unreasonable to suggest that prison officials were unaware as to what gallery officers were on duty during Plaintiff's complaints. *Maddox*, **655 F.3d at 722.** The Court notes that Defendant Allen does not deny Plaintiff's allegation that he was the gallery officer on duty during the times at issue.

The Court also notes that, like in *Maddox*, the form which Plaintiff was provided required Plaintiff only to provide a "brief summary of grievance." Although the Administrative Code at the time required an inmate to identify by name or sufficiently describe the individuals at issue, the grievance form provided by Plaintiff only asks for a "brief summary of grievance" and does not direct Plaintiff to identify by name or provide a description of any of the employees he is grieving against. Accordingly, given the grievance forms failure to instruct Plaintiff to identify Allen and the complete exhaustion of Plaintiff's grievance without any mention of a procedural default for failing to identify any of the officers involved, the June 25, 2009 grievance served to exhaust his claims against Defendant Allen.

In addition to the June 25, 2009 grievance, Plaintiff specifically refers to Defendant Allen in a July 17, 2009 grievance. In that grievance, he labeled Defendant Allen as one of the gallery officers who he spoke with about his tray. He also alleged in this grievance that the segregation staff failed to get his tray right. Although Defendants argue that Defendant Allen was only named in the July 17, 2009 grievance in an incidental manner, the substance of the July 17 grievance does not appear to be incidental towards Allen. Plaintiff's July 17 grievance alleges that he has again been served a diet tray with soy protein on it and that the segregation staff continues to fail to get his tray right. He specifically mentions C/O Allen as a gallery officer that he spoke with about the tray issue and it does not appear

from the grievance that his mentioning of Allen is in a complementary light or that Allen was incidental to the events he is complaining of.  Instead, it appears from his mentioning of Allen in conjunction with his request for relief that the segregation staff "get [his] trays right" indicates that Plaintiff had a grievance against the segregation gallery officers, including C/O Allen.   As the Seventh Circuit stated in *Maddox*, the purpose of the grievance process is to provide "prison officials a fair opportunity to address [inmate's] complaints" and not to put individuals on notice of possible future litigation. *Maddox*, **655 F.3d at 722**; *see also Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005) (purpose of the grievance process is alert prison administration to particular problems within the prison and give them an opportunity to remedy those issues without the "hassle and expense of litigation")**.  Here, Plaintiff's grievance met that obligation, by informing prison officials that he was still having trouble with segregation staff,  including C/O Allen, and his dietary trays.  Thus, the undersigned finds that Plaintiff has exhausted his administrative remedies against Allen and accordingly, **RECOMMENDS** that the Court **DENY** Defendant Allen's motion for summary judgment.

### IV.  <u>Conclusion</u>

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** summary judgment as to Danny Allen.  If the Court adopts the foregoing findings of fact and conclusions of law in this Report and Recommendation, then the claims remaining before the Court will be the retaliation and deliberate indifference claim against Defendant Allen and the retaliation claims against Warden Swartz.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto.  The failure

to file a timely objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: May 14, 2012.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge