IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY G. HARRIS, #N-57672,   )
                             )
       Plaintiff,            )
                             )
vs.                          )   Case No. 10-cv-0596-MJR-SCW
                             )
DANNY ALLEN, and             )
WARDEN SWARTZ,               )
                             )
       Defendants.           )

MEMORANDUM AND ORDER

REAGAN, District Judge:

**A.   Introduction**

In August 2010, Larry G. Harris, an inmate of the Illinois Department of Corrections ("IDOC") who was then confined at Lawrence Correctional Center in Sumner, Illinois, filed suit in this District Court under 42 U.S.C. § 1983, claiming violations of his federally secured constitutional rights. Harris' original pleadings and motions were quite lengthy, even in terms of pro se filings. His First Amended Complaint, with exhibits, was 144 pages long and dismissed for running afoul of Federal Rule of Civil Procedure 8's requirement for a "short and plain statement" of the claim. Harris filed a Second Amended Complaint in May 2011, naming 24 Defendants (most of whom were correctional officials or "C/O"s at Pinckneyville Correctional Center and Lawrence Correctional Center).

On threshold review of Harris' Second Amended Complaint in July 2011, the undersigned Judge dismissed certain claims and severed certain Defendants into a

1

separate action,[1] leaving two named Defendants in this suit: "Danny Allen" and "Warden Swartz" (*see* Docs. 17, 22). The two claims that remained herein were identified as: Count 1 – retaliation by Swartz and Allen for Harris' prior litigation involving a soy-free diet, and Count 2 – deliberate indifference by Allen to Harris' medical needs.

Allen filed his answer and affirmative defenses in mid-November 2011. Swartz filed his answer and affirmative defenses in mid-January 2012. In his affirmative defenses (Doc. 32, p. 3), Allen asserted that Harris had failed to exhaust available administrative remedies before filing this suit, as required by the Prison Litigation Reform Act, 42 U.S.C. 1997e(a). The case was referred to the Honorable Stephen C. Williams, United States Magistrate Judge, for pretrial proceedings, and a discovery and trial schedule was entered.

On March 1, 2012, Defendant Allen timely moved for summary judgment based on Harris' failure to exhaust (Docs. 32-39). On May 14, 2012, Magistrate Judge Williams submitted to the undersigned District Judge a Report (Doc. 44), recommending that the Court deny Defendant Allen's summary judgment motion. Allen filed objections to the Report on May 29, 2012 (Doc. 45), and Harris responded on

---

[1] As to severance of unrelated claims in a single suit, *see George v. Smith*, **507 F.3d 605, 607 (7th Cir. 2007), and** *Owens v. Hinsley*, **635 F.3d 950, 952 (7th Cir. 2011) (Complaints containing mishmash of unrelated claims "should be rejected, ... either by severing the action into separate lawsuits or by dismissing improperly joined defendants.").**

June 7, 2012 (Doc. 46). The issue of Allen's exhaustion now ripe, the Court rules thereon, beginning with reference to the applicable legal standards.

B. <u>Applicable Legal Standards</u>

→ REVIEW OF OBJECTIONS TO REPORT AND RECOMMENDATION

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Defendant Allen specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); Southern Dist. Illinois Local Rule 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.*

→ EXHAUSTION REQUIREMENT UNDER THE PLRA

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. 104-134, 110 Stat. 1321 (1996), requires prisoners to exhaust administrative remedies before they file suit in federal court. **42 U.S.C. 1997e(a).** The exhaustion requirement applies to all lawsuits challenging prison conditions under 42 U.S.C. 1983 and to actions under any other federal law brought by a prisoner confined in any jail or correctional facility. *See Porter v.* **Nussle, 534 U.S. 516, 532 (2002)(United States Supreme Court held that PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust while his

lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit (or dismiss any claims which are not fully exhausted). *See Jones v. Bock,* 549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). So here, Defendant Allen bears the burden of demonstrating that Plaintiff Harris failed to exhaust all available administrative remedies before he filed this suit. *Kaba*, 458 F.3d at 681, *citing Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

To properly exhaust within the meaning of the PLRA, the inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). As an inmate confined in the IDOC, Harris was obligated to follow the regulations contained in the IDOC's grievance procedures.

The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Illinois Administrative Code 504.800, *et seq.* (West 2008). At *step one*, the inmate presents his complaint to a correctional counselor. If that fails to resolve the problem, *step two* entails the inmate submitting a written grievance on a designated form to the facility's Grievance Officer within a specific period (usually the grievance must be filed within 60 days after the inmate discovers the problem about which he complains). After investigating, the Grievance Officer forwards his

conclusions to the Chief Administrative Officer (CAO). The CAO's decision is furnished to the inmate.

If the inmate still is unsatisfied, *step three* is an appeal in writing to the Director of the IDOC. The inmate submits the Grievance Officer's report and the CAO's decision to the Administrative Review Board ("ARB"). The ARB examines the documents, determines whether a hearing is needed, may interview the inmate, and may call witnesses. Ultimately, the ARB submits a written report of its findings to the Director of the IDOC who makes the final decision on the grievance. Copies of the ARB's report and the Director's final decision are sent to the inmate.

The Seventh Circuit has held that the judge, not the jury, must determine "debatable factual issues relating to the defense of failure to exhaust administrative remedies." *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008)**, *cert. denied*, **129 S.Ct. 1620 (2009).** Where exhaustion is raised as an affirmative defense, the district court follows the sequence delineated in *Pavey, id.* **at 742,** typically including a hearing conducted on the question of exhaustion (a so-called "Pavey hearing"). In the instant case, Judge Williams determined that no Pavey hearing was warranted, because there are no disputes of fact as to exhaustion (Doc. 44, p. 3). Defendant Allen does not take issue with this finding. The undersigned examines de novo the portions of Judge Williams' Report to which Defendant Allen has specifically objected.

C. <u>Analysis</u>

Plaintiff alleges that while he was housed at Western Illinois Correctional Center, he started a soy-diet "revolution" among the prison population, actively

5

encouraging inmates to file lawsuits to obtain a soy-free diet. Plaintiff had "won" his own lawsuit previously, and he urged his fellow inmates to follow his example. Plaintiff was transferred to Pinckneyville Correctional Center ("PCC"), where he informed correctional officers of his need for a soy-free diet. The PCC officers, however, did not honor Plaintiff's request for a soy-free diet.

As to Defendant Allen, a correctional officer at PCC, Plaintiff Harris alleges that Allen denied the soy-free meal request every time he was on duty. Plaintiff further alleges that Allen did this (a) in retaliation for Plaintiff's prior successful litigation, and (b) in deliberate indifference to Plaintiff's medical needs for soy-free meals. Defendant Allen seeks summary judgment on the ground that all of Plaintiff's claims are barred due to Plaintiff's failure to properly exhaust administrative remedies.

ARB records indicate that Plaintiff did submit several grievances related to denial of his soy-free diet and retaliation. Defendant Allen asserts, however, that none of these include allegations directed against him and that he is only mentioned in passing in a single grievance.[2]

Beginning with the latter point, a July 17, 2009 grievance (received by the ARB on September 24, 2009) named Allen but, argues Allen, did not contain any allegations specifically aimed *at* Allen. The July 17, 2009 grievance recounts that

---

[2] Allen acknowledges that Plaintiff "utilized the grievance process for his complaints that other officers had denied him his soy-free diet and had acted in retaliation – but he did not properly utilize the process for" his claims against Allen. *See* Doc. 39, p. 5.

6

Plaintiff received a tray from Correctional Officer Johnson which was marked "soy-free" but actually contained soy products.  When Plaintiff brought the problem to Johnson's attention, Johnson gave Plaintiff another tray and left.   The grievance further notes that Defendant Allen came by Plaintiff's cell and informed Plaintiff that although C/O Johnson had left, Sergeant McAlvey knew that Plaintiff had not been fed.  Defendant Allen concedes that this grievance was fully exhausted but maintains that it only mentioned him incidentally and was not directed at him, thus Plaintiff failed to exhaust this claim as to Allen.

Freshly examining the record on this point, the undersigned District Judge concurs with Magistrate Judge Williams' conclusion that Plaintiff successfully exhausted his administrative remedies against Defendant Allen.   In addition to the July 17, 2009 grievance (which names Allen), Plaintiff filed a grievance on June 25, 2009, relating to his soy-free diet and the failure of the "gallery officers" to properly make rounds and to remedy the issues with his inadequate meal tray.  That grievance was fully exhausted through the IDOC process.

As Judge Williams' Report correctly noted (Doc. 44, pp. 7-8) and as pointed out above, the Seventh Circuit requires strict adherence to the IDOC's grievance rules.  The procedures in place at the time Plaintiff Harris filed the grievances at issue herein required that a grievance contain factual details about "each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." **20 Ill. Admin. Code 504.810(b).**  If the inmate does not know the name of an individual

7

involved, he must "include as much descriptive information about the individual as possible." *Id.*

Plaintiff's June 25, 2009 grievance explained that he unsuccessfully endeavored to get a *gallery officer* (whom he now identifies as C/O Allen[3]) to address his diet issue, and further alleges that the gallery officers on his wing or cell block failed to make their required rounds. Defendant Allen *was* a gallery officer on the wing/deck where Plaintiff's cell was located at the time in question. Defendants obviously knew this, and Plaintiff fully exhausted this grievance through the administrative process on the merits. Plaintiff's failure to specifically identify Allen as the gallery officer in his grievance is not fatal to his claims against Allen.

Like Judge Williams, the undersigned Judge finds **Maddox v. Love, 655 F.3d 709, 721-22 (7th Cir. 2011),** quite instructive. In *Maddox,* the District Court had granted summary judgment to the prison officials on an inmate's "group worship" claim (count 4) as not fully exhausted, due to the fact the inmate failed to list the names of the defendants (or, if the names were not known at the time, their description) on his grievance, as required by § 504.810 of the Administrative Code. The Seventh Circuit vacated the entry of summary judgment after finding that the inmate's grievance, *even though it did not name the individuals responsible* for the decision in question, served its function by providing prison officials a fair opportunity to address his complaint. **Id., 655 F.3d at 722.**

---

[3] Plaintiff has filed an affidavit attesting that Allen is the gallery officer on duty at the time of the events in the grievance, and Allen does not deny that he is this officer.

> The Court reasoned as follows:
>
> The defendants argue that Maddox failed to exhaust his administrative remedies because he did not name the defendants or describe them in his grievance; the defendants do not otherwise contend that Maddox failed to follow the prison three-step grievance process….
>
> **This argument fails because before this suit, Maddox's compliance with the grievance process was never in question. Maddox's grievance was rejected on the merits at every stage of review without any indication from prison officials that it was procedurally deficient.** "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers,* 416 F.3d at 585.
>
> Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.

*Maddox,* **655 F.3d at 721-22 (emph. added).**

The Court then declared: "Maddox's grievance served its function by providing prison officials a fair opportunity to address his complaint. He complained about an administrative decision … [and] it belies reason to suggest that prison administrators at Lawrence were unaware of who was responsible for that decision…. That Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.*, **655 F.3d at 722.**

Similarly here, Plaintiff's June 25, 2009 grievance presented a clear complaint that the gallery officer(s) assigned to Plaintiff's cell block and/or wing failed

9

Case 3:10-cv-00596-MJR -SCW   Document 47   Filed 07/13/12   Page 10 of 12   Page ID #531

Case 3:10-cv-00596-MJR -SCW   Document 47   Filed 07/13/12   Page 10 of 12   Page ID #531

to do their jobs of making all required rounds, and this failure thwarted Plaintiff from getting a gallery officer or other C/O to address his dietary issues. IDOC officials processed the grievance and decided it on the merits. They never noted a procedural deficiency and did not reject it for lack of specificity or failing to sufficiently identify the responsible correctional officer(s). They should not now be allowed to assert that the grievance was insufficiently specific.

As in *Maddox,* the grievance served to provide the prison officials with a fair opportunity to address the shortcomings of which the inmate complained. The grievance "served its function in alerting the state and inviting corrective action," so Defendant cannot now obtain summary judgment based on a procedural defect which was ignored when the IDOC proceeded to deny Plaintiff's grievance on the merits.

Judge Williams correctly flagged an additional similarity between this case and *Maddox*, a point which bolsters the conclusion that Defendant Allen is not entitled to summary judgment based on a newly-raised procedural deficiency in Plaintiff's grievance. The grievance form supplied to inmates and used by both *Maddox* and Plaintiff Harris asked for a "brief summary of the grievance;" it did not direct the inmates to identify or describe the correctional officer or IDOC employee about whom he was grieving. *See Maddox,* **655 F.3d at 722 ("This conclusion is particularly appropriate in this case where the form provided by the prison didn't request inmates to provide the name of the person subject to the complaint.").**

In the instant case, Plaintiff described the gallery officers assigned to his area of the prison and on duty during the meal time hours as the ones ignoring his diet

10

issues and refusing to make rounds. Prison officials had the information necessary to easily determine which correctional officer or officers were on duty at the time and in that wing and cellblock. And, as noted above, prison officials resolved the June 25, 2009 grievance, which Plaintiff fully exhausted, *on the merits*; they did not reject it as procedurally defective. In the administrative remedy context of prisoner grievances, a "procedural shortcoming … amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." ***Maddox*, 655 F.3d at 722,** *quoting* ***Conyers v. Abitz*, 416 F.3d 580, 585.** They did not do so here as to the June 25, 2009 grievance, so summary judgment is not warranted on that basis.

And although the July 17, 2009 grievance primarily focused on complaints that *dietary staff* repeatedly failed to get Plaintiff's tray "right," that grievance specifically named Allen as a gallery officer to whom Plaintiff spoke about his meal tray problem after it was delivered. Likewise, a June 22, 2009 grievance complained about dietary staff but *also* complained that *correctional officers* were failing to patrol the gallery (thereby allowing Plaintiff to address with them his meal-tray problems).

Following the reasoning and holding of *Maddox,* the undersigned Judge concludes (as did Judge Wilkerson) that Defendant Allen is not entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies.

### D. Conclusion

Accordingly, the Court **ADOPTS in its entirety** Magistrate Judge Williams' Report and Recommendation (Doc. 44) and **DENIES** Defendant Allen's motion for summary judgment (Doc. 38). As Judge Williams' Report states, what

11

remains for resolution are Plaintiff's claims for retaliation and deliberate indifference against Defendant Allen and retaliation against Defendant Swartz.

A Trial Practice Schedule has been entered herein by Judge Williams (*see* Doc. 37), which includes a deadline for discovery and dispositive motions other than those based on exhaustion, as well as a jury trial date before the undersigned District Judge on June 10, 2013.

IT IS SO ORDERED.

DATED July 12, 2012.

s/Michael J. Reagan
Michael J. Reagan
United States District Judge
