IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10−cv−596−MJR−SCW |
| | ) |
| DANNY ALLEN AND GREGORY SCHWARTZ, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This case is before the Court on a Motion for Summary Judgment (Docs. 60 & 61) filed by Defendants Danny Allen and Gregory Schwartz. The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a)**. It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Docs. 60 & 61).

## II. Findings of Fact

The events which form the basis of Plaintiff's Complaint occurred while Plaintiff was housed at Pinckneyville Correctional Center. Plaintiff was transferred to Pinckneyville from Western Illinois Correctional Center on June 10, 2009 (Doc. 61 Ex. 1 at p. 9). While at Western Illinois Correctional Center, Plaintiff had initiated a lawsuit regarding the use of soy in inmate's diets by the Illinois Department of Corrections. At the time Plaintiff was transferred to Pinckneyville and

during the course of events that make up the basis of his Complaint, Defendant Gregory Schwartz was acting Warden of Pinckneyville and Defendant Danny Allen was a correctional officer.

Plaintiff was transferred to Pinckneyville as a result of discipline he received while at Western Illinois Correctional Center for getting other inmates involved in business ventures, namely that he was encouraging numerous inmates to complain about soy in their diets and was trying to get inmates to join him in a class action lawsuit against IDOC based on the use of soy in prison meals (Doc. 65 Ex. A). Plaintiff was transferred to Pinckneyville on June 10, 2009. Just prior to his transfer, Plaintiff met with medical staff at Western Illinois on June 8, 2009 to fill out an Offender Health Status Transfer Summary. The summary indicated that Plaintiff did not receive a therapeutic diet (Doc. 61 Ex. 4). At some point after his transfer, Plaintiff spoke with Defendant Swartz about his need for a soy-free diet (Doc. 61 Ex. 3). Defendant Swartz informed him that he would need to obtain a proper order to receive a soy-free diet (*Id.*). Plaintiff indicated that he was receiving meals but could only eat the vegetables as Plaintiff was not receiving any soy-free protein or meat products (Doc. 61 Ex. 6 at p.4). His attorney in his case against Western Illinois indicated that he was provided a bag of potato chips and a cookie on June 10th, no soy-free food on June 11th, and two soy-free pancakes on June 12th (Doc. 61 Ex. 5 at ¶ 9). Both Defendants Allen and Schwartz stated in their affidavits that they were not aware of Plaintiff's litigation or grievance history (Doc. 61 Exs. 2 & 3).

On June 14, 2009, Plaintiff wrote an emergency grievance indicating that he needed a soy-free diet as part of a medical condition that he suffered, hypothyroidism (Doc. 65 Ex.B). The grievance was determined to be an emergency in nature (*Id.*). The Health Care Unit noted that they were unaware of Plaintiff's need for a soy-free diet but they had been researching Plaintiff's claims and the doctor was going to write a dietary order for Plaintiff to receive a soy-free diet (*Id.*). The

dietary manager indicated in the grievance that he would need a therapeutic diet order from the Health Care Unit in order to provide Plaintiff with the relief he sought (*Id.*).

On June 19, 2009, Dr. Obadina wrote a therapeutic diet order providing Plaintiff with a soy free diet (Doc. 61 Ex. 1 at p. 26; Ex. 4). Plaintiff began receiving his soy-free diet on June 24, 2009 (Doc. 61 Ex. 1 at p. 27). His soy-free diet was packaged differently from the regular meal trays as it came in a white Styrofoam tray which was marked with his name, cell number, and the phrase "No soy diet tray" (*Id.*). Plaintiff maintains that sometimes, however, he would not get his soy-free tray. Defendant Allen indicated that if an inmate had an issue with his tray, Allen would call the dietary department to let them know and a new tray would be sent (Doc. 61 Ex. 2 at ¶ 4). Plaintiff, however, testified that Defendant Allen would inform Plaintiff that he did not have a tray for Plaintiff and that he was checking on it, but when the officers came to pick up the meal trays after mealtime, Plaintiff would still have no tray. Plaintiff would inform Allen again and again he would be informed that they were checking on the issue, but Defendant Allen would leave and Plaintiff would not see him again (Doc. 61 Ex. 1 at p. 30). This happened when Defendant Allen worked, usually two to three times a week on the day shift (*Id.* at pp. 30-31). On those days, Plaintiff testified that he would go without a lunch (*Id.*).

### III. Conclusions of Law

A.  **Summary Judgment Standard**

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a)); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits,

and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee,* 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill.* of Lisle, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d at 512. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

B. Retaliation

A prisoner has a right under the First Amendment to challenge the conditions of his confinement by filing grievances, and prison officials are not allowed to retaliate against an inmate for exercising his First Amendment Rights. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.

2000)(citing Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996)).  In order to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).  Plaintiff must also demonstrate that "his speech was at least a motivating factor in the [defendant's] action" in order to make his *prima facie* case.  *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).  However, once Plaintiff has made his *prima facie* case, the burden shifts to defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, i.e. it would have happened anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).  Plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner*, 639 F.3d at 379.  At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation.  *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008).

Defendants Allen and Schwartz argue that they are entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff received his soy-free diet and because there is no connection between his failure to receive a soy-free diet upon arriving at Pinckneyville and his previous lawsuits.  Here, Plaintiff did not initially receive his soy-free diet because the health care unit at Western Illinois did not mark on his Health Status Transfer Summary that he received a special diet.  Plaintiff informed Defendant Schwartz of his predicament and Schwartz informed him that he would need a therapeutic diet order from the Health Care Unit.  Plaintiff obtained such an order on June 19, 2009 and started receiving his soy-free diet on June 24, 2009.

There is simply no evidence on the record that Defendants Schwartz or Allen retaliated against Plaintiff by denying him his soy-free diet. As to Defendant Schwartz, he testified that he was not involved in the decisions on special diets and that he informed Plaintiff what was necessary in order to obtain a soy-free diet, which Plaintiff eventually obtained. Plaintiff makes much of the fact that Western Illinois incorrectly marked his transfer summary as having no special diet which caused him to be denied a soy-free diet for his first fourteen days at Pinckneyville. He claims that this is a material fact that evidences retaliation. However, there is simply no evidence of retaliation, nor does the fact that Western Illinois failed to mark his soy-free diet on his transfer summary evidence that Defendant Schwartz knew about Plaintiff's dietary requirements and denied Plaintiff a soy-free diet. Nothing in the record indicates that Defendant Schwartz played any part in mistakenly marking the transfer summary or that he had any knowledge of Plaintiff's past soy-free diet requirements. Instead, the evidence reflects that Plaintiff filed a grievance which brought the dietary issue to the attention of the proper officials who reviewed Plaintiff's dietary concerns and issued him a dietary order so that he could receive a soy free diet (*See* Docs. 65 Ex. B; 61 Ex. 4).

Further, there is no connection between the actions alleged by Plaintiff and his prior lawsuits. Plaintiff argues Defendant Schwartz failed to supply him with a soy-free diet in retaliation for his lawsuits. While at Western Illinois, Plaintiff was disciplined for operating a business venture through encouraging other inmates to join a class action lawsuit against IDOC regarding soy in inmates' diets. Plaintiff states that his transfer was a direct result of this First Amendment Activity and thus Schwartz's action was in retaliation for those actions as well. However, Plaintiff has no evidence, besides his own speculations, that Defendant Schwartz knew of his activities while Plaintiff was at Western Illinois or knew of Plaintiff's prior lawsuits and retaliated against Plaintiff for them. Defendant Schwartz also testified that he had no knowledge of Plaintiff's prior lawsuits or grievances. Plaintiff has failed to point to any evidence which suggests that Schwartz was involved

in denying him a soy-free diet or that Defendant Schwartz was retaliating against Plaintiff for filing his prior lawsuit.

There is also no evidence in the record to suggest that Defendant Allen retaliated against Plaintiff by denying him a soy-free diet. Plaintiff points out that on numerous days that Allen worked he did not receive a soy-free diet and that this was done in retaliation for his lawsuits. Plaintiff again points out that he was transferred to Pinckneyville for filing lawsuits and that Allen was aware of the fact because Allen made statements about Plaintiff's soy-free diet including: "What, are you special?". However, the Court finds that these statements do not suggest any knowledge on the part of Allen as to Plaintiff's previous lawsuits and Allen denied knowledge of Plaintiff's lawsuits regarding his soy-diet. Further, there is nothing in the record, besides Plaintiff's speculations, that evidence Allen's actions were done in retaliation. Thus, the undersigned finds there is no evidence that Allen retaliated against Plaintiff by denying him a soy-free diet.

Plaintiff also argues at length that Defendant Allen retaliated against him by writing a disciplinary ticket after Plaintiff wrote a grievance against Warden Wilson. However, this claim is not a part of Plaintiff's current lawsuit. The instant case only deals with two claims, a claim of retaliation by denying Plaintiff a soy-free diet against Defendants Allen and Schwartz and a claim of deliberate indifference against Defendant Allen. Plaintiff's claim that Defendant Allen retaliated against him by writing a false disciplinary ticket was severed from this instant case into a new case (See Doc. 17 at pp. 7-9; *Harris v. Ryker*, Case No.: 11-648-GPM-DGW). Nor has Plaintiff shown how Defendant's actions in writing him a disciplinary ticket evidence retaliation by denying him a soy-free diet. Thus, the Court finds that there is also no evidence of retaliation against Defendant Allen. Accordingly, the undersigned finds that both Defendants Allen and Schwartz are entitled to summary judgment on Plaintiff's retaliation claim.

C.    **Deliberate Indifference**

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976))**. In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

While Defendant contends that a deprivation of a meal a few days a week for three months is not a serious medical condition, Defendant mainly argues that he did not have the sufficiently culpable state of mind. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a

prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000)).

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Defendant Allen first argues that if the Court assumes that Allen denied Plaintiff lunch one or two times a week for a few months, this would not, in itself, be objectively serious enough to meet the first standard for deliberate indifference. The Seventh Circuit has stated that depriving a prisoner of food may satisfy the first prong of the deliberate indifference standard, but that the Court must look at the extent, duration, and consequences of the deprivation. **See *Reed v. McBride*, 178 F.3d 849, 953 (7th Cir. 1999) (citing *Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir. 1998) (denying four consecutive meals over two day established first prong); *Dearman v. Woodson,* 429 F.2d 1288, 1289 (10th Cir. 1970) (prisoner denied food for fifty plus hours stated a deliberate indifference claim); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (denial of one out of every nine meals not a constitutional violation)); see also *Antonelli v. Sheehan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (allegations of nutritionally deficient diet stated a claim for deliberate indifference).** Here, however, there are still issues of fact as to the extent and

duration of the deprivation of Plaintiff's soy-free diet. There are still questions of fact as to how many days a week Plaintiff did not receive a soy-free lunch, how often and for how long the deprivation occurred, and the nutritional quality of his meals. These are still issues that must be developed at trial.

Further, the Court finds that there are issues of fact as to the second prong, Defendant Allen's state of mind. Defendant Allen stated that when inmates did not receive their diet trays, he would call dietary and have a tray sent down. He also recalled that Plaintiff received trays but sometimes did not like what was on the tray (Doc. 61 Ex. 2). However, Plaintiff testified that Defendant Allen would inform Plaintiff that he did not have a tray for him and that he would check with dietary but that Plaintiff would not get a tray. When Defendant Allen would come back around to pick up the trays, Allen would inform Plaintiff that he was still checking on the tray and would leave and never come back (Doc. 61 Ex. A at pp. 29-30). Plaintiff also testified that Defendant Allen would give his tray to other inmates (Doc. 61 Ex. A at p. 36). Thus, there is clearly an issue of fact as to how Defendant Allen dealt with Plaintiff's lack of soy-free tray while he worked on Plaintiff's wing. Defendant maintains he would call dietary and get a new tray, while Plaintiff maintains that Defendant would basically ignore his concerns. Accordingly, the undersigned finds that Defendant Allen is not entitled to summary judgment on Plaintiff's deliberate indifference claims and **RECOMMENDS** that the Court **DENY** summary judgment as to Defendant Allen.

## IV. Conclusion

Thus, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Docs. 60 & 61). Specifically, the undersigned **RECOMMENDS** that the Court **FIND** that Defendants Allen and Schwartz are entitled to summary judgment on Plaintiff's retaliation claims but that Defendant Allen is not

entitled to summary judgment on Plaintiff's deliberate indifference claims.  Should the Court adopt the undersigned's findings, the only issue that will remain for trial is Plaintiff's claim of deliberate indifference against Defendant Allen for failing to provide him with a soy-free diet.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**  Accordingly, Objections to this Report and Recommendation must be filed on or before **February 25, 2013**.

**IT IS SO ORDERED**.
DATED. February 7, 2013

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge